UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VAUDENCIA CEBALLOS HAMILTON,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 1:20-cv-00359-DCN<br>1:18-cr-00086-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court in the above entitled matter is Petitioner Vaudencia Cabellos Hamilton's Motion to Vacate, Set Aside, or Correct Sentence under § 2255 (Dkt. 1).[1] The Government filed a Response to Hamilton's Motion. Hamilton did not file a reply and the time for doing so has now passed. The matter is now ripe for the Court's review.

## II. BACKGROUND

On March 13, 2018, a federal grand jury returned an Indictment charging Hamilton with Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(a) (Count 1), and Possession with Intent to Distribute Fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c) (Count 2), CR-86, Dkt. 12. On July 11, 2018, a federal grand jury returned a Superseding Indictment charging Hamilton with an additional crime, Conspiracy to Distribute Fentanyl and Methamphetamine Resulting in

---

[1] In this Order, "CR-86" is used when citing to Hamilton's criminal case record in 1:18-cr-00086-DCN. All other docket citations are to the record in the instant civil case. Hamilton also filed her Motion to Vacate in her criminal case. CR-86, Dkt. 70.

Serious Bodily Injury and Death in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846 (Count 3). CR-86, Dkt. 21. The punishment for distribution of Fentanyl and Methamphetamine Resulting in Serious Bodily Injury and Death mandates a minimum sentence of twenty years, while the mere possession with intent to distribute fentanyl or methamphetamine permits a sentence of not more than twenty years. *Compare* 21 U.S.C. § 21 U.S.C. 841(a)(1) *with* 21 U.S.C. § 841(b)(1)(C).

On February 2, 2019, Hamilton entered into a plea agreement with the Government. *Id.*, Dkt. 39. On March 11, 2019, Hamilton pleaded guilty to Count 3 of the Superseding Indictment, Conspiracy to Distribute Fentanyl and Methamphetamine Resulting in Serious Bodily Injury and Death. *Id.*, Dkt. 41. The Government moved to dismiss Counts 1 and 2 of the Superseding Indictment by oral motion. *Id.*, Dkt. 50. On June 12, 2019, this Court dismissed Counts 1 and 2 of the Superseding Indictment, and sentenced Hamilton to twenty years of imprisonment and five years of supervised release. *Id.*

Hamilton immediately appealed the Court's judgment. *Id.*, Dkt. 53. The Ninth Circuit dismissed the appeal on June 9, 2020. *Id.*, Dkt. 68. On July 17, 2020, Hamilton filed the pending petition, moving to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.

### III. ANALYSIS

**A. Motion to Vacate (Dkt. 2); CR-281 (Dkt. 70)**

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws

of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Hamilton suggests she is entitled to relief under § 2255 due to ineffective assistance of counsel.

   1.   *Timeliness of Petition*

Under the applicable statute of limitations, a § 2255 motion must be brought within one year after a judgment of conviction becomes final unless the motion has been statutorily tolled according to 28 U.S.C. § 2255(f)(2)–(4). A judgment of conviction becomes final when it "has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari denied." *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001). Hamilton's § 2255 petition was filed on July 17, 2020—well before her appeal rights were exhausted on approximately September 9, 2020 —and is thus timely. [2]

   2.   *Evidentiary Hearing and Request for Counsel*

Under § 2255, "a district court must grant a hearing to determine the validity of a

---

[2] Hamilton's appeal to the Ninth Circuit was dismissed on June 9, 2020. CR-86, Dkt. 69. For purposes of postconviction relief, Hamilton's judgment became "final" when the time for filing a petition for certiorari expired approximately 90 days after the Ninth Circuit issued its judgment. *Clay v. United States,* 537 U.S. 522, 525 (2003) ("For purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition of certiorari contesting the appellate court's affirmation of the conviction."); *see also* Sup. Ct. R. 13 .

petition," "'[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quotation marks omitted) (alteration in original). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id*. at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

For the reasons explained below, the claims raised in Hamilton's § 2255 motion are conclusory and/or do not give rise to a claim for relief. The Court accordingly finds an evidentiary hearing is not necessary and will decide the motion on a facial review of the record. *Schaflander*, 743 F.2d at 717; *Hearst*, 638 F.2d at 1194. Further, because the Court finds an evidentiary hearing is not warranted and that the "interests of justice" do not warrant appointment of counsel, Hamilton's request for appointment of counsel (Dkt. 8) is also denied. *Weygant v. Look*, 718 F.2d 952, 954 (9th Cir. 1983); 18 U.S.C. § 3006A(a)(2)(B).

   3. *Claims Regarding Ineffective Assistance of Counsel*

Hamilton suggests she is entitled to relief under § 2255 due to ineffective assistance

of counsel. To establish ineffective assistance of counsel, Hamilton must show both that her: (1) counsel's performance was deficient; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The *Strickland* standard applies to guilty plea challenges based on ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 52 (1985) ("In order to satisfy the second, or "prejudice," requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). If either prong of the *Strickland* test is not satisfied, "it cannot be said that the conviction or sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687–88. Thus, a court need not consider one prong of the *Strickland* test if there is an insufficient showing of the other. *Id*. at 697.

The *Strickland* standard is "highly demanding" and requires Hamilton to show that her attorney's performance amounted to "gross incompetence." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). Because "it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," and "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," judicial scrutiny of counsel's performance "must be highly deferential." *Strickland*, 466 U.S. at 689. When assessing an ineffective assistance of counsel claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Hamilton argues her counsel[3] was ineffective on two grounds: (1) failure to assert actual innocence and present an argument against the causation element of her offense, and (2) failure to explain the elements and penalty enhancement of her offense. The Court addresses each contention in turn.

   a.  <u>Failure to Assert Actual Innocence and Present an Argument Against Causation</u>

As noted, the *Stickland* test applies where, as here, a petitioner challenges her guilty plea agreement due to ineffective assistance of counsel. *Hill*, 474 U.S. at 52. A guilty plea is only valid if it was voluntarily and intelligently made. *Bousley v. United States,* 523 U.S. 614, 618 (1998). A plea is voluntary if the defendant is fully aware of the direct consequences and is not induced by threats, misrepresentation, or improper promises. *Id.* Additionally, a plea is intelligent when the defendant is advised by competent counsel and is made aware of the nature of the charge against her. *Id.*

Hamilton argues she was misinformed as to the causation elements of Count 3 prior to agreeing to plead guilty to Conspiracy to Distribute Fentanyl and Methamphetamine Resulting in Serious Bodily Injury and Death in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846. Title 21 of United States Code § 841(b)(1)(C) has two principal elements: (i) knowing and intentional distribution of certain controlled substances,

---

[3] The Court appointed defense counsel L Craig Atkinson to represent Hamilton shortly after her arrest. Hamilton later retained counsel Gerald Bublitz. CR-86, Dkt. 6. In her § 2255 motion, Hamilton contends that only Bublitz was ineffective in his representation.

including Fentanyl and Methamphetamine, § 841(a)(1); and (ii) death caused by ("resulting from") the use of such drugs, § 841(b)(1)(C). *Burrage v. United States*, 571 U.S. 204, 210 (2014). The Supreme Court has interpreted the "resulting from" language of the statute as requiring "but for" causation. *Id*. at 218. If drugs distributed by a defendant were not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be held liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use was a "but for" cause of the death or injury. *Id.* at 219. Hamilton suggests she was led to believe the applicable causation standard was instead whether the drugs she distributed were a contributing factor in her victim's death. Dkt. 1-1, at 2. Hamilton argues that because the appropriate standard is instead "but for" causation, she is factually innocent of the crime.

The Court may address Hamilton's actual innocence if she can establish that the constitutional error in her plea "probably resulted in the conviction of one who is actually innocent." *Bousley*, 523 U.S. at 623 (*quoting Murray v. Carrier,* 477 U.S. 478, 496 (1986)). Actual innocence "means factual innocence, not mere legal insufficiency." *Id*. Additionally, the movant must prove that "in light of all evidence it is more likely than not that no reasonable juror would have convicted [her]." *Id.* (cleaned up).

In support of her claim of actual innocence, Hamilton suggests Bublitz failed to review exculpatory evidence, proving her innocence, which could have reduced her penalty enhancement under §§ 841(a)(1) and 841(b)(1)(C). Hamilton contends certain evidence would have shown her drug distribution was not the "but for" cause of the death of her purported victim, Domenico Stewart.. For instance, Hamilton identifies inconsistencies in

a statement Ryan Curtis, the individual who distributed drugs supplied by Hamilton to Stewart, gave to police. Dkt. 1-1, at 2. Hamilton suggests such statements were recorded in police reports, as were investigators' beliefs that Stewart's wounds were consistent with a "kick in the face." *Id*. at 2, 4. Hamilton also explains Stewart's autopsy report determined Stewart died of a methamphetamine overdose complicated by craniocerebral blunt force trauma. *Id*. at 4. Hamilton argues police reports further noted there were other wounds on Stewart's body indicating there was potentially foul play at the time of his death, and that "[t]he evidence of the shoes found beside Stewart's body" was "a symbol used to send a message . . . and could have been presented to reduce the enhanced penalty for death or [used as] evidence of a homicide." *Id*. at 3. Hamilton argues that if she had been aware of the aforementioned evidence, she would have proceeded to trial instead of agreeing to a plea.

Challenging the validity of a guilty plea based on defense counsel's failure to inform the defendant of certain underlying facts is difficult. The Ninth Circuit has explained that "unless an omission is so egregious as to raise an issue of incompetent representation, the failure of an attorney to disclose some facts to the client will not be a basis for challenging a guilty plea." *Johnson v. United States*, 539 F.2d 1241, 1243 (9th Cir. 1976). Here, the record belies Hamilton's claim that Bublitz failed to disclose relevant facts, and her conclusory allegations fall far short of establishing incompetent representation.

First, in his sworn declaration, Bublitz attests that he specifically advised Hamilton Count 3 was defensible based upon Stewart's autopsy report. Dkt. 6-3, at 3. Bublitz states he informed Hamilton she had several arguments with respect to Count 3, including an

MEMORANDUM DECISION AND ORDER-8

argument regarding causation, as well as a broader argument that methamphetamine was readily available in the community so the jury should not simply take the word of Hamilton's co-defendants that the drugs Hamilton distributed were the source of Stewart's overdose. *Id*.

Second, Bublitz explains that he made sure Hamilton had copies of all of the Government's written discovery, including police reports, medical reports, and Stewart's autopsy report. *Id*. at 5–6. Hamilton thus had the information she now claims she lacked regarding the circumstances of Stewart's death before she decided to plead guilty. Bublitz also made Hamilton aware of what was on the audio portions of the Government's discovery, including audio recordings in which Hamilton conspired with her co-defendant, Herman Sedillo. *Id*. at 6. Bublitz also asserts that in meetings with Hamilton, he explained both inconsistencies and consistencies in the Government's case. *Id*. Bublitz contends he discussed the Government's discovery with Hamilton on multiple occasions, and specifically advised Hamilton that Stewart's cause of death was methamphetamine overdose complicated by head trauma. *Id*. at 6, 8. However, after addressing all of the evidence, trial strategy, and the likelihood of conviction, Bublitz contends Hamilton decided to accept the plea agreement. Bublitz maintains Hamilton "entered the plea with full knowledge of facts as well as defenses available to her." *Id*. at 7.

Third, and finally, the transcript from Hamilton's change of plea hearing verifies Hamilton was aware of the evidence she now claims Bublitz failed to disclose. For instance, during the hearing, the Government explicitly stated: "On August 15th, 2017, the Canyon County Coroner's Office performed an autopsy on the victim to determine the

MEMORANDUM DECISION AND ORDER-9

cause of death. The autopsy determined that the victim died of methamphetamine overdose complicated by craniocerebral blunt force trauma." Dkt. 6-1, at 14. The Government also explained Curtis obtained methamphetamine and fentanyl from Sedillo and his son, Matthew Sedillo, and that Hamilton was responsible for providing such substances to the Sedillos. *Id*. at 13. On August 13, 2017, Curtis distributed the fentanyl to Stewart, and insisted that Stewart try the substance. *Id*. at 14. Stewart ingested a portion of the substance and lost consciousness. *Id*. In an attempt to revive Stewart, Curtis slapped him multiple times across the face and then injected Stewart with the methamphetamine. Shortly after, Stewart died. *Id*. After summarizing the factual basis of Hamilton's crime, the Government specifically stated, the "defendant admits that but for the victim's ingesting the fentanyl and methamphetamine distributed by the defendant and her coconspirators, the victim would not have died." *Id*. at 15. Significantly, when the Court then questioned Hamilton, "[d]o you agree with the government's summary of what you did?" Hamilton responded: "Yes." *Id*. The Court also specifically asked Hamilton whether there was anything in the Government's statement that she disagreed with. *Id*. Hamilton responded: "No." *Id*.

Having reviewed the record, the Court finds Hamilton's allegations regarding Bublitz's purported failure to review exculpatory evidence and to present an argument against the causation element of her offense is not only conclusory and lacking evidentiary support, but is also contradicted by both the Government and Hamilton's express statements during the change of plea hearing, as well as by Bublitz's declaration.. Thus, Hamilton's first argument that her representation was deficient fails. Hamilton cannot establish she would not have pled guilty had Bublitz disclosed certain facts where the

record shows she was specifically made aware of such facts—through Bublitz, the Government's discovery, and the Government's statements during her change of plea hearing. Hamilton also cannot show Bublitz was deficient in failing to present an argument against causation when Bublitz specifically informed Hamilton such arguments were available, but she nonetheless decided to plead guilty.

    b. <u>Failure to Explain the Elements of the Offense and the Penalty Enhancement of Count 3</u>

Hamilton next argues Bublitz failed to explain to her that in order to be convicted under § 841(b)(1)(C), her actions must have been the but for cause of death and not just a contributing cause. Additionally, Hamilton suggests Bublitz did not adequately explain the penalty enhancement of § 841(b)(1)(C), which generally requires a twenty-year minimum sentence.

Hamilton's plea agreement specifically outlined the elements of Count 3, including that "but for" Stewart's "ingesting the fentanyl and methamphetamine distributed by the defendant and others during the course of the conspiracy, [Stewart] would not have died." CR-86, Dkt. 39, at 3. Hamilton's plea agreement also explicitly stated, a "violation of conspiracy to distribute fentanyl and methamphetamine resulting in serious bodily injury and death, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846 as charged in count three of the superseding indictment, is punishable by a term of imprisonment *of at least 20 years up to life*[.]" *Id.* at 5 (emphasis added). Thus, Hamilton's plea agreement itself clarified "but for" causation was an element of the offense to which she pled, and also expressly identified the statutory mandatory minimum sentence of twenty years.

Further, the Court also reviewed Hamilton's plea agreement during the change of plea hearing, and explained the elements and penalties of the offense. First, the Court stated, on "Count Three, the Court must impose a mandatory minimum sentence of 20 years." Dkt. 6-1, at 11. Upon the Court's questioning, Hamilton confirmed that she understood this statutory mandatory minimum. *Id*. The Court also required the Government to set forth the elements of Count 3. The Government did so, stating, *inter alia*, "but for the victim ingesting the fentanyl and methamphetamine distributed by the defendant and others during the course of the conspiracy, the victim would not have died." *Id*. at 13. Again, Hamilton confirmed she agreed with the entirety of the Government's summary. *Id*. at 15.

Hamilton also confirmed that she understood the range of punishment for her crime was 20 years to life, that Bublitz went over every provision of her plea agreement with her before she signed it, and that she understood every provision of her plea agreement before she signed it. Dkt. 6-1, at 6, 16. Further, in his declaration, Bublitz explains he told Hamilton that "240 months was the starting point for conviction under Count 3" that he never told Hamilton to agree to anything during her change of plea hearing, and that he informed Hamilton of the elements of her offense. and Dkt. 6-3, at 5, 7.

In sum, because the record illustrates Hamilton was repeatedly informed of the elements of and penalty for her offense—through her counsel, her plea agreement, the Government, and the Court—Hamilton's unsupported allegation that Bublitz failed to explain the elements and penalty enhancements § 841(b)(1)(C) falls far short of showing

either the deficient performance or the prejudice prong required to establish ineffective assistance of counsel under *Strickland*.[4]

   4.     *Certificate of Appealability*

Hamilton cannot appeal from the denial or dismissal of her § 2255 Motion unless she first obtains a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is warranted when "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); 28 U.S.C. § 2253(c).

After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's rulings on Hamilton's motion are debatable or wrong. As described in detail herein, each of Hamilton's claims of ineffective assistance of counsel are contradicted by the record, and/or are entirely conclusory. Accordingly, a certificate of appealability will not issue.

## II.     ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

   1.     Hamilton's Motion to Vacate, Set Aside, or Correct Sentence under 28

---

[4] The Court does not address the Government's argument that Hamilton waived her right to contest the elements of her crime in her plea agreement because it finds Hamilton's claims of ineffective assistance of counsel fail under *Strickland*. Dkt. 6, at 11–12.

U.S.C. § 2255 (Dkt.1); CR-86 (Dkt. 70) is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil cases.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Hamilton is advised that she still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, she must file a timely notice of appeal.

4. If Hamilton files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: May 5, 2021

_____
David C. Nye
Chief U.S. District Court Judge